# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ERIC DEMOND LOZANO, | § | |
| TDCJ #1915276 | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION No. 3:18-CV-00237 |
| | § | |
| BRYAN COLLIER, ET AL., | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Bryan Collier, Executive Director of the Texas Department of Criminal Justice (TDCJ), Lorie Davis, Director of the TDCJ Institutional Division, and Lettie Watkins, Chaplain of the Stringfellow Unit, by and through the Office of the Attorney General of Texas, file their Motion for Summary Judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure. In support, Defendants offer the following:

## STATEMENT OF THE CASE

Plaintiff Eric Demond Lozano, proceeding pro se and in forma pauperis, is an offender incarcerated at the Stringfellow Unit of TDCJ. Lozano brings suit pursuant to 42 U.S.C. § 1983 alleging violations of his First and Fourteenth Amendment rights, and pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (RLUIPA). ECF No. 1. Specifically, Lozano alleges Defendants violated his civil rights by denying him a religious dorm, a Muslim designated Unit, a designated place to pray, and the ability to shower individually or with other Muslim inmates. *Id.* Lozano sues Bryan Collier, Executive Director of TDCJ, Lorie Davis, Director of the TDCJ Institutional Division, and Lettie Watkins, Chaplain of the Stringfellow Unit, in both their individual and official capacities. *Id.* at 4, 9.

The relief Lozano seeks is extensive. Lozano seeks a restraining order, preliminary injunction, and a permanent injunction to allow: (1) access to the showers for Jumah and "regular showers" individually, or with other Muslim inmates, but separate from the general population of the Unit; (2) two full hours of Jumah prayer weekly; (3) two full hours of Taleem services weekly; (4) two full hours of Quranic studies weekly, and (5) a Muslim designated Unit on which the services and activities sought in (1)-(4), *supra*, may occur. *Id.* at 9. In the alternative, Lozano seeks a Muslim designated dorm with "T.V.s (2) DVD (2) Cd Players (2)" so Muslim inmates may observe Jumah, Taleem, and Quranic studies without the currently required volunteer present; or, alternatively to that, Lozano requests a personal DVD player and digital Quran "model CQ1" for him to use personally and remain on his person at all times. *Id.* Further, Lozano seeks a single cell in which he may pray "without having to argue or fight just to pray my 5 obligatory [prayers]." *Id.* Lozano also prays for monetary relief in the form of nominal and punitive damages. *Id.*

Defendants assert that: (1) Lozano failed to meet his burden under RLUIPA to show that TDCJ policy has substantially burdened his religious exercise; (2) TDCJ has compelling governmental interests in maintaining its current religious policies; (3) current policies are the least restrictive means of furthering those compelling governmental interests; (4) Lozano fails to raise a genuine issue of material fact that his rights have been violated under the First or Fourteenth Amendment; and (5) they are entitled to qualified immunity from suit.

## SUMMARY OF THE ARGUMENT

Lozano's claims allege that not providing him religious dorm, a Muslim designated Unit, a designated place to pray, and the ability to shower individually or with other Muslim inmates substantially burdens his religious exercise. ECF No. 1, ECF No. 1-1. Further, Lozano alleges Chaplain Watkins enforces policies toward Muslim inmates at the Stringfellow Unit in a biased manner and fails to follow TDCJ's policies regarding Muslim offenders. ECF No. 11 at 4.

Lozano has not presented any material facts to show that his rights have been violated under RLUIPA or the First or Fourteenth Amendment. Lozano's claims that he has been denied a Muslim designated unit or dorm, a single person cell in which he may pray, and individual showers do not substantially burden his religious exercise because they do not violate his religious beliefs and he is able to practice his faith without modifying his religious behavior. Additionally, Defendants' policies are furthering a compelling governmental interest and are implemented in the least restrictive means available. Lozano additionally fails to establish a genuine issue of material fact that his rights have been violated under the Establishment or the Equal Protection Clauses. Defendants' further assert their entitlement to qualified immunity. Accordingly, because Lozano has failed to raise a genuine issue of material fact regarding these issues, this Court should render summary judgment in Defendants' favor.

## SUMMARY JUDGMENT EVIDENCE

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). Lozano's allegations are insufficient to carry his evidentiary burden of establishing a genuine issue of material fact for trial. In support of his motion, Defendants attach the following summary judgment evidence:

| | |
|---|---|
| **Exhibit A:** | **Administrative Directive (AD)-07.30, AD-07.35, and AD-07.38 [Bates Nos. Lozano-000001–20], with Business Records Affidavit** |
| **Exhibit B:** | **Chaplaincy Manual policies 12.01 (rev. 6), 12.01 Attachment B (rev. 5), 14.02 (rev. 6) and 14.02 Attachment A (rev. 5) [Bates Nos. Lozano-000021–29], with Business Records Affidavit** |
| **Exhibit C:** | **Executive Directive (ED)-07.29 (rev. 3) and Administrative Directive (AD)-07.30 [Bates Nos. Lozano-000030–43], with Business Records Affidavit** |
| **Exhibit D:** | **Relevant Classification Records of Eric Demond Lozano [Bates Nos. Lozano-000044–63], with Business Records Affidavit** |
| **Exhibit E:** | **Business Records Affidavit of Eric Demond Lozano's Offender Protection Investigation Records for the time period of January 2016 to May 17, 2020, dated May 17, 2020 [Bates No. Lozano-000160]** |

| Exhibit F: | Affidavit of Senior Warden Bridgette Hayes, dated June 16, 2020 [Bates Nos. Lozano-000064–68] |
|---|---|
| Exhibit G: | Affidavit of Chaplain Timothy Jones, dated June 15, 2020 [Bates Nos. Lozano-000069–70] |
| Exhibit H: | Chaplaincy Records of Eric Lozano [Bates Nos. Lozano-000071–83], with Business Records Affidavit |
| Exhibit I: | Chaplaincy Policy 02.04 & 06.01 [Bates Nos. Lozano-000084–93], with Business Records Affidavit |
| Exhibit J: | Stringfellow Unit 24 Hour Building Schedule as of April 22, 2020 [Bates Nos. Lozano-000094–98], with Business Records Affidavit (Filed Under Seal) |
| Exhibit K: | Chaplaincy Records Regarding the Number of Offenders per Religious Group [Bates Nos. Lozano-000099–131], with Business Records Affidavit |
| Exhibit L: | Chaplaincy Records Regarding Jewish and Native American Formation Documents [Bates Nos. Lozano-000132–159], with Business Records Affidavit |
| Exhibit M: | Stringfellow Unit Chaplaincy Records of Eric D. Lozano [Bates Nos. Lozano-000161–291], with Business Records Affidavit |

## STANDARD OF REVIEW

Summary judgment should be granted when the moving party conclusively establishes that there is no genuine issue of material fact. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). There is no issue for resolution at trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Once the moving party has carried his burden, the burden shifts to the non-moving party to show that summary judgment is not appropriate. *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996).

Disagreement among the parties as to the facts will not prevent summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. On the contrary, summary judgment is precluded under Rule 56(c) only when the dispute is genuine, and the disputed facts might affect the outcome of the suit. *Id.* at 248. The

nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996) (quoting *Little*, 37 F.3d at 1075). A court will "not, in the absence of any proof, assume that the non-moving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

Pursuant to Federal Rule of Civil Procedure 56, Defendants now move for summary judgment in their favor because there are no genuine issues of material fact as to Lozano's claims.

## ARGUMENT AND AUTHORITIES

Defendants seek summary judgment as to Lozano's RLUIPA claims for the following reasons: (1) Lozano has not met his burden to demonstrate that each challenged policy or practice substantially burdens the free exercise of his religion; and (2) to the extent, if any, Lozano has met that burden, Defendants have shown the challenged policies to be the least restrictive means of advancing compelling governmental interests. Defendants additionally assert Lozano presents no genuine issue of material fact that his First or Fourteenth Amendment rights were violated. Further, Defendants assert their entitlement to qualified immunity.

### A. Defendant Chaplain Watkins incorporates the argument made within her motion to dismiss and reasserts that she lacks authority to grant Lozano the injunctive relief he seeks.

In her motion to dismiss, Defendant Chaplain Watkins made the argument that Lozano's claims for injunctive relief against her must fail for lack of Article III standing. ECF No. 10 at 4–6. For the sake of brevity, Chaplain Watkins incorporates this argument by reference herein.

**B.    Lozano fails to raise a genuine issue of material fact as to his RLUIPA claims.**

No genuine issue of material fact exists regarding whether Lozano's rights under RLUIPA were violated. RLUIPA provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a). However, not all substantial burdens are prohibited. RLUIPA further provides that even if such a substantial burden exists, the intrusion is excused if the government demonstrates that imposition of the burden (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling government interest. *Id.* "[W]hen faced with a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a 'substantial' burden' on the prisoner's ability to practice his religion." *See Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 833 (8th Cir. 2009).

"[R]eligious accommodations must not override other significant interests in maintaining order and safety, and courts should give deference to prison officials in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005). Under RLUIPA, the plaintiff bears the initial burden of proving that the challenged governmental action or regulation "substantially burdens" the plaintiff's religious exercise. *DeMoss v. Crain*, 636 F.3d 145, 150 (5th Cir. 2011) (citing *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008)). A governmental action imposes a substantial burden on religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Lozano claims that his religious exercise has been substantially burdened because TDCJ denied him a Muslim dormitory, a Muslim designated unit, access to showers separate from the general population, and a private cell in which he can pray and/or be housed. Although Lozano recites the correct RLUIPA standard by stating his religious exercise was "substantially burdened," he does not demonstrate this.

6

1.    **Defendants should be granted summary judgment because Lozano has not met his *prima facie* burden to establish that the policies at issue substantially burden his free exercise.**

For the reasons below, Defendants assert that Lozano has not carried his burden to show that the challenged policies substantially burden the free exercise of his religion. Having failed to carry that burden on each claim, Lozano cannot prevail under RLUIPA and Defendants should be granted summary judgment.

a)    **Religious Dorm or Muslim Designated Unit Claim**

Lozano alleges that his religious exercise has been burdened because he has been "denied a designated unit to be closer to volunteers." ECF No. 1-1 at 5. Lozano claims that "Jumah is a mandatory congregational prayer service" which is "the most sacred event in the religious of Islam." *Id.* at 3. "Jumah must occur on Fridays just after noon and consist of specific prayers recited in Arabic" and that "individual prayer does not meet the requirements of the Quran." *Id.* at 3–4. Because Jumah must occur on Friday (a weekday), Lozano alleges "potential volunteers are at work and unable to travel to prison units to participate," thus exacerbating the problem of trying to secure volunteers to lead Islamic services. *Id.* at 2. Lozano also asserts Taleem, a time for practitioners of Islam receive "religious instructions" and are "taught the tenets of the religion" is also of "special importan[ce] to the practice of Islam." *Id.* at 3. Lozano claims that because there are no Muslim designated units, "TDCJ's policy, or lack thereof, on Muslim housing assignments and Islam's mandatory Friday services effectively precludes volunteer led Muslim religious activities." *Id.* at 2. Lozano's demand to segregate Muslims at a particular unit seems to stem from his inability to secure outside volunteers who are willing to facilitate Muslim services at his unit. Lozano offers nothing further to suggest that his religious exercise has been substantially burdened by TDCJ's Muslim housing policy.

Lozano has failed to support his position that he has suffered a substantial burden on his religious practices and his claims under RLUIPA should therefore fail. *See Adkins*, 393 F.3d at 570. Nor does

he offer evidence to show that he was forced to choose between doing something religiously prohibited or forgoing a non-trivial benefit. A RLUIPA claim is predicated on a government imposition as opposed to a denial. RLUIPA does not address the substantial-burden issue in terms of prohibiting or denying religious services.

Lozano fails to show that not having access to a Muslim designated unit or dorm is more than a *de minimis* burden on his exercise of religion. *See id.* Additionally, because there are currently no Muslim designated units or dorms in TDCJ, Lozano cannot overcome the standard in *Adkins* that "a governmental action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570. While Lozano may desire a designated unit, he presents no evidence demonstrating TDCJ's recruitment of Muslim volunteers is insufficient and the lack of volunteers pressures his religious behavior or significantly violates his religious beliefs. *Jones v. Shabazz*, 352 F. App'x 910, 914 (5th Cir. 2009) (concluding that Nation of Islam inmate failed to demonstrate that prison officials substantially burdened his religious exercise by denying him access to videotaped religious lectures by Minister Farrakhan).

The burden must be more than an inconvenience, it must substantially interfere with a tenet or belief that is central to the religious doctrine. Lozano is still able to practice his religion; he would prefer, however, to practice more frequently than volunteers are available. As noted in the building schedule, however, time is allotted for Jumah Prayer Service, Taleem, and Quaranic Study. Exhibit J at Lozano-000096–97 (building schedule showing Jumah Prayer Service on Fridays from 1200-1400, Taleem on Sunday from 1230-1400, and Quaranic Study from 1800-2000). As seen in Lozano's Unit Chaplaincy Records, appended hereto as Exhibit M, Lozano is able to regularly attend the weekly Jumah service. *See generally* Exhibit M. However, Lozano cannot show a substantial burden because

this is a benefit which is otherwise not available. *Adkins*, 393 F.3d at 570. Although TDCJ policy may burden Lozano, the burden is not substantial because it does not pressure him to significantly modify his religious behavior or violate his religious beliefs. *See DeMoss*, 636 F.3d at 153.

Lozano has failed to support his allegation that the requirement to have a volunteer during secondary religious services is a substantial burden on his religion. TDCJ policy provides for one weekly primary service, even if no outside volunteer is available. Pursuant to TDCJ policy, offenders desirous of additional religious programming apart from the weekly "primary" service offered under the Scott Plan and tailored specifically to their faith preference may have an additional service if an approved volunteer, time, space, and security are available. Exhibit C at Lozano-000037–38. The volunteer may apply in writing to the unit chaplain for the additional programming, and provided it is compliant with TDCJ and Chaplaincy policies and procedures, and that no previous determination had been made regarding the programming at issue, the request is considered for approval in light of institutional safety, security, and orderly operation. Exhibit A at Lozano-000013–17. At present, the Stringfellow Unit is not able to offer additional, secondary Muslim services on a weekly basis, but the Muslim area Chaplain "conducts additional, secondary, religious services" as able. Exhibit G at Lozano-000069. Should an approved outside volunteer come forward, a secondary service would be offered up to once per week so long as the volunteer, time, space, and security were available. *Id.* at Lozano-000069–70. Currently, all Muslim offenders are allowed to attend primary Jumah services on Friday, even without a volunteer present. Plaintiff, as well as other Muslim offenders, also have the option to engage in supplemental reading and prayer in their cell or dayroom, even if a formal secondary service cannot be facilitated due to the unavailability of a volunteer. As highlighted above, Plaintiff is able to attend Friday Jumah prayer and may sometimes attend secondary services, which substantially complies with his religious requests. The policies, therefore, do not place a substantial burden on the exercise of his religion and his claim should be dismissed. *Newby v. Quarterman*, 325 Fed.

9

App'x 345, 351 (5th Cir. 2009). Lozano also cannot show that he has been limited in attending any of the religious services held on the Stringfellow Unit.

Furthermore, in *Baranowski v. Hart*, 486 F.3d 112, 124–25 (5th Cir. 2007), the plaintiff claimed that religious services were not provided, because no rabbi or approved religious volunteer was available to lead the services. *Id.* Relying on the Fifth Circuit opinion in *Adkins v. Kaspar*, the court held that because the plaintiffs were not prevented from congregating by prison policy, but by the lack of clergy and authorized volunteers, the acts of the defendants did not place a substantial burden on Baranowski's free exercise of his Jewish faith under RLUIPA. *Id.* In *Adkins*, the Court concluded, "The requirement of an outside volunteer does not place a substantial burden on [plaintiff's] religious exercise." *Adkins*, 393 F.3d at 571.

The Fifth Circuit again analyzed the requirements of religious volunteers to supervise any religious gatherings of over four offenders in *Brown v. Collier*. In *Brown*, the Plaintiff asserted his religious freedom was substantially burdened because the TDCJ requirement that a volunteer be present for religious services limited the availability of religious services and he was therefore only allowed one hour of group religious services per week. *Brown v. Collier*, 929 F.3d 218, 229 (5th Cir. 2019). The lack of volunteers, not the TDCJ policy, however, was the limitation at the core of the Plaintiff's argument. *Id.* at 230. The Court observed that "despite specific and concerted efforts over the past years to recruit volunteers to participate in Muslim religious activities at the prison, TDCJ has been unsuccessful in securing a significant number of Muslim religious volunteers." *Id.* The Court again concluded, as it had in *Adkins*, that it was not a TDCJ policy which substantially burdened the religious exercise of the Muslim inmates, but rather the lack of volunteers. *Id.*

To the extent Lozano is claiming TDCJ's policies in not providing a Muslim designated unit limits his access to Muslim volunteers, he has provided no evidence this presents a substantial burden for him.

**b)    Designated Place to Pray Claim**

Lozano demands access to a designated place to pray so that he may pray without having to defend himself. ECF No 1 at 7–8. In other words, Lozano wants an exclusive space in prison where others are excluded. Lozano complains that he cannot pray in his bunk because he must "stand, kneel, and bow" while praying and that to pray while in his bunk would be "unsafe and a violation of prison rules." *Id.*

Although Lozano desires a place where he may pray without feeling the need to fight or potential to be violated, it is Lozano's cell mates, not TDCJ policies, which impose this burden on him. Lozano claims if he were to pray in his bed he would violate prison rules which would lead to a disciplinary case; however, he presents no evidence of this. Although the threat of a serious disciplinary case may constitute a substantial burden, Lozano does not offer any support that he has received or is likely to receive a disciplinary case in this instance. *See Holt v. Hobbs*, 574 U.S. 352, 361 (2015) (holding the threat of a serious disciplinary case may constitute a substantial burden because of pressure to conform). Indeed, there is no TDCJ policy that would prohibit an offender from praying in his cell, and Muslim offenders are approved to possess prayer rugs for this specific purpose.

Additionally, TDCJ has protocols in place for offenders who feel threatened by or get in fights with their cellmates.

> TDCJ, in endeavoring to rehabilitate offenders, has several steps to attempt to aid offenders avoid violence and threats. First, any threats of violence should be reported to a TDCJ officer so staff may observe and protect the threatened offender if there is any escalation. Then, if an offender continues to feel threatened, they may request a housing change to a different dorm away from any offender who has threatened them. Finally, when an offender feels their life is in jeopardy because of threats or acts of violence, the offender may file an Offender Protection Investigation (OPI) Report, which requires TDCJ officers to investigate the threats, make a finding of credibility, and make a recommendation for a resolution.

Exhibit F at Lozano-000065. In this instance, Lozano has not submitted any OPIs from January 2016 to May 2020. *Id.* ("[Lozano] has not filed any housing change request or OPI Reports during his time

at the Stringfellow Unit"); Exhibit E. By escalating conflicts between offenders in a linear manner TDCJ is able to ensure the safety and security of offenders and staff. *See* Exhibit F at Lozano-000065.

Because Lozano is able to pray in his cell or in the chapel during religious services, he cannot show TDCJ's failure to provide him a designated place to pray places a substantial burden on his religion. Accordingly, Defendants are entitled to summary judgment on this issue.

### c)    Shower Claim

Lozano complains the TDCJ shower policy violates his religious rights because he is forced to expose himself and violate his religious belief in modesty, and also because he is forced to shower with other offenders who do not adhere to the same religious beliefs. ECF No. 1-1 at 5–6. Lozano fails to support his position that he has suffered a substantial burden on his religious practices and his claim requesting to shower individually or only with Muslim offenders under RLUIPA should therefore fail. In considering whether a practice or policy substantially burdens an inmate's sincere religious beliefs, the court may consider whether the inmate has alternative means of exercising his religion. *See, e.g.*, *Newby v. Quarterman*, 325 Fed. App'x 345, 351 (5th Cir. 2009).

Here, Lozano does not allege that he is not able to shower before his Jumah, but rather that he is made to shower with other, non-Muslim, offenders. ECF No. 1-1 at 5–6. Lozano claims he begins his prayer during his shower, and nothing in his complaint or other pleadings suggests he has been forced to change his prayer practice. *See generally id.*; *see also* ECF Nos. 11, 12. Lozano's relief seeks the exclusion other offenders from the shower prior to the Muslim Jumah religious service, but this cannot be said to substantially burden his religious practices because he may still shower and pray before Jumah. *See* Exhibit F at Lozano-000065; Exhibit I at Lozano-000089–90; *see also* Exhibit J at Lozano-000096 (building schedule showing "Building (Chapel) Islamic Jumah Showers").

TDCJ policy states "[t]he unit chaplain shall coordinate with the warden to allow Muslim offenders to shower prior to their Jumah service in order to meet their holy obligation for cleanliness

in prayer." Exhibit I at Lozano-000090. The Stringfellow building schedule allows for "Islamic Jumah Showers" on Fridays from 1130-1200 hours. Exhibit J at Lozano-000096. This time allows Muslim offenders to shower prior to their Jumah religious service, which is then held from 1200-1400 hours. *Id.* Warden Bridgette Hayes, Senior Warden of the Stringfellow Unit, additionally declares in her affidavit that:

> My understanding is that Offender Lozano also seeks to shower individually or with only Muslim offenders. Pursuant to TDCJ policy, there is a time allotted for Offender Lozano and other Muslim offenders to shower prior to the Jumah religious service each Friday. Jumah is conducted on Fridays, which is the Islamic holy day of the week. As the Senior Warden of the Stringfellow Unit, I have coordinated with Chaplain Watkins, the Unit Chaplain, to establish a time for "Jumah Showers," which is currently from 1130-1200 each Friday, as shown in the Stringfellow Unit 24 Hour Building Schedule.

Exhibit F at Lozano-000065.

To the extent Lozano seeks to shower with only Muslim offenders or by himself for *all* showers, he cannot show this is a substantial burden on his religious practices. ECF No. 1 at 4; ECF No. 1-1 at 1–2. Lozano may protect his modesty and "guard [his] private parts and chas[t]ity" by wearing boxers in the shower. ECF No. 1-1 at 5–6; Exhibit F at Lozano-000065–66 (describing the one-for-one clothing exchange and manner by which Lozano may preserve his modesty by wearing boxers in the showers).

Because Lozano cannot show a substantial burden on his religious exercise, his claim seeking individual showers or showers with only Muslim offenders should be dismissed.

> **d)   Lozano has not met his burden to establish the challenged policies impose a substantial burden on his religious exercise.**

The Fifth Circuit made clear in *Adkins* that "a governmental action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570. There is no suggestion by Lozano that the challenged

policies apply differently among offenders who adhere to the Islamic faith. Accordingly, Lozano has not met his burden to establish that the challenged policies impose a substantial burden on his religious exercise and is RLUIPA causes of action fail as a matter of law. Summary judgment should therefore be granted in favor of Defendants.

> ### 2.    The challenged policies are the least restrictive means to further compelling governmental interests.

To the extent, if any, the Court finds that Lozano carried his *prima facie* burden, Defendants assert that the challenged policies are the least restrictive means of furthering the compelling governmental interests of security, time and space, maintaining good order, and controlling costs. To meet their burden of proof on this prong, Defendants need only "take the unremarkable step of providing an explanation for the policy's restrictions that takes into account [their] institutional need to maintain good order, security, and discipline or to control costs." *Smith v. Ozmint*, 578 F.3d 246, 252 (4th Cir. 2009) (quoting *Lovelace v. Lee*, 472 F.3d 174, 190 (4th Cir. 2006)); *see also Gooden v. Crain*, 353 Fed. App'x 885, 887 (5th Cir. 2009). Both the Supreme Court and Congress have indicated that courts are to apply that standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 721 (citing 146 Cong. Rec. S7775 (July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA (quoting S. Rep. No. 103-111, at 10 (1993))), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1899, 1900). "Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions." *Id.* (RLUIPA will be applied "in an appropriately balanced way, with particular sensitivity to security concerns.").

Once Defendants point to a compelling penological interest, the final step of the RLUIPA analysis is whether the challenged regulation is the least restrictive means of furthering the compelling

government interest. 42 U.S.C. § 2000cc-1(a)(2); s*ee Mayfield v. Texas Dep't Of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008) (citing 42 U.S.C. § 2000cc-2(b)); *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). "The phrase 'least restrictive means' has its plain meaning." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 332 (5th Cir. 2009), *aff'd sub. nom. Sossamon v. Texas*, 131 S. Ct. 1651 (2011). But, "[s]hould inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition. *Cutter v. Wilkinson*, 544 U.S. 709, 726 (2005).

### a)    Religious Dorm or Muslim Designated Unit Claim

As noted, Lozano has not shown that the lack of a religious dorm or a Muslim designated unit were a substantial burden on his religious practice, and his RLUIPA challenge to the policy should fail on that basis. If the Court finds that the challenged policy substantially burdens his free exercise, however, Defendants should nonetheless be granted summary judgment as the challenged policy represents the least restrictive means to advance the compelling governmental interests in prison security, maintaining good order and discipline, and controlling costs.

### (1)    Compelling Governmental Interest

TDCJ has a compelling governmental interest in maintaining order and controlling costs. As the Supreme Court explained in *Cutter*, RLUIPA is to be applied "consistent with consideration of costs and limited resources." *Cutter*, 544 U.S. at 721. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Turner v. Safley*, 482 U.S. 78, 90 (1987).

TDCJ has more prison units than any other state prison system in the country and has one of the largest offender populations in the country. TDCJ also provides for a comprehensive list of programs and services, including educational enrichment, vocational training, substance-abuse programs, comprehensive medical and mental health care, dental care, successful reentry programs, and religious

15

programming. TDCJ provides these services despite an ever-changing, extremely diverse offender base and limited labor and financial resources. TDCJ cohorts inmates in order to maximize access to critical programs based on the limited resources available. *See generally* Exhibit G. This means that offenders with similar needs are housed together, and programs and services are focused at designated units. Cohorting is also used for religious programming. *See id.* Because there is limited time and space at a prison unit, and because there are limited number of employed chaplains and religious volunteers available and willing to supervise services in prison, select units are designated to host certain types of religious services and offenders are cohorted at those units. *See id.*; *see also* Exhibit K and Exhibit L.

TDCJ currently houses many Jewish and Native American offenders in designated units to provide better Rabbinical support and as a result of a lawsuit, respectively. Exhibit L at Lozano-000136–37, Lozano-000141. Jewish offenders also have access to a unit on which they may access the kosher kitchen in addition to the kosher food at unit commissaries. Exhibit G at Lozano-000069–70. TDCJ also has a faith-based dorm which is open to offenders of all religions. "A faith-based dorm (FBD) offers support for offenders who desire to incorporate religious faith and practice in a group setting." Exhibit I at Lozano-000085–86; Exhibit G at Lozano-000070. The TDCJ faith-based dorms are "voluntary, open to all faiths or no faith." *Id.* Offenders in faith-based dorms are also "allowed to participate in regular chapel worship services or in services of their chosen faith." *Id.* Because of the large number of Muslim offenders in TDCJ, 9,194 as of February 29, 2020, "a single unit could not house the entire offender population who identifies as Muslim." Exhibit G at Lozano-000069; Exhibit K at Lozano-000101. Moreover, even specifically designated units house offenders of all faiths, and even offenders on designated units may only participate in one weekly main religious service and a secondary service when time, space, security, and an approved volunteer are available. Exhibit C at Lozano-000037; Exhibit G at Lozano-000069.

16

The faith-based dorms are available to Lozano. Defendants' denial of a Muslim designated unit advances the compelling governmental interests in prison security, maintaining good order and discipline, and controlling costs.

### (2)        Least Restrictive Means

TDCJ explored several options in assessing the least restrictive means to accommodate Muslim offenders' desire to be close to volunteers and the compelling governmental interest in security, maintaining order, and controlling costs. Although TDCJ does not have a Muslim designated dorm or unit, TDCJ has considered allowing offenders to congregate without a volunteer present and allowing religious services via video or similar other means. *See generally Brown*, 929 F.3d 218; *see also Adkins*, 393 F.3d 559. TDCJ allows Muslim offenders to congregate weekly for Jumah Prayer Service with or without a volunteer present, but must dedicate security staff to oversee the services. Exhibit C at Lozano-000037. Security resources, however, are not infinite. Muslim offenders are also able to congregate for secondary religious services when time, space, security, and a volunteer can be found. *See id.* at Lozano-000038.

The TDCJ policy requiring volunteers or another form of supervision to be present for any religious activity involving more than four inmates was challenged in *Brown v. Collier. See generally Brown*, 929 F.3d 218. The TDCJ policy is imposed uniformly over all religions and allows each major faith group one-hour per week of religious services regardless of whether a volunteer is available. Exhibit C at Lozano-000037 ("TDCJ units shall provide an initial allotment of four one hour services per month for primary religious programming for each identified religious group."). Additional services are available when a volunteer is available. *Id.* at Lozano-000038 ("Any additional programming shall be scheduled dependent upon availability of time, space, security, and an approved volunteer."). The lack of opportunity for Muslim offenders to practice their religion is accordingly not a result of policy, but because of a lack of volunteers to supplement the available worship opportunities.

TDCJ employs area Muslim Chaplains to "assist in recruiting religious volunteers, travel to all units in the state to meet with offenders, and conduct additional, secondary, religious services." Exhibit G at Lozano-000069 (there are currently two area Muslim Chaplains employed and TDCJ is actively seeking to fill three open positions). Area Chaplains work to recruit volunteers and conduct secondary religious services whenever possible, thus ensuring Muslim offenders are able to practice their religion through religious services as frequently as possible. *Id.*

For the above reasons, allowing one main weekly religious service per week and requiring availability of time, space, security, and a volunteer for more religious services is the least restrictive means of furthering TDCJ's compelling governmental interest in security, maintaining order, and controlling costs.

### b)    Designated Place to Pray Claim

Lozano alleges that he is unable to pray in his cell because his cellmates either do not give him space and time, or "try to provoke [him] to fight them." ECF No. 1-1 at 8. Although the Court should find that because Lozano is able to pray in his cell, if the Court finds instead that Lozano has met his prima facie burden of showing a substantial burden, his claim must still fail because TDCJ's compelling governmental interest in time and space, and controlling costs are implemented in the least restrictive means.

### (1)    Compelling Governmental Interest

Lozano demands access to a personal designated place to pray, about the size of an empty cell, so that he may pray. ECF No. 1-1 at 7–8. Lozano is not permitted a separate dedicated place to pray because his own cell is large enough to stand, bow, and kneel during his prayers. The Stringfellow Unit does not have any single person cells available to allow Lozano the desired cell. Exhibit F at Lozano-000065 ("All cells which house only one offender at Stringfellow are reserved for temporary use—

either for offenders awaiting transfer to a new unit or for offenders with open [Offender Protection Investigations] that are under investigation.").

The District Court in Minnesota discussed a similar issue when a Muslim offender sought to pray outside his cell during his five daily prayers. *Jihad v. Fabian*, 680 F.Supp.2d 1021, 1026 (D. Minn. 2010). In *Jihad*, the Plaintiff claimed he was prohibited from praying in a room with a toilet and that being forced to pray in his cell, with the toilet, substantially burdened his religious beliefs. *Id.* at 1027. The prison asserted the compelling governmental interests of safety and security because the increased movement of offenders would place inmates and staff in greater jeopardy. *Id.* Although the court found requiring Jihad to pray in a room with a toilet, his cell, substantially burdened his religious practice, the court found "prison safety and security requirements provided a compelling justification for that burden." *Id.* Accordingly, the court found that the policy allowing offenders to worship during prayer service or in their own cells was "the least restrictive means of achieving the defendants' compelling governmental interest in safety and security." *Id.*

Allowing even one offender to move out of his cell five times a day for prayer requires additional staff, time, and space. Exhibit F at Lozano-000065. Because the Stringfellow Unit does not have any single person cells, in order for Lozano to pray his daily prayers outside of his cell, he would need to go to a designated place for him to pray. Movement within a prison unit must be controlled, therefore Lozano would need a lay-in, or an appointment, to move through the unit to the designated place to pray. *Id.* TDCJ officers would need to be stationed accordingly so Lozano could reach the designated area, and at least one officer would need to be in the designated area, even the chapel, while Lozano is praying to ensure the safety and security of the unit. *Id.* Thus, an officer would need to be available to conduct security during Lozano's prayer time up to five times a day. *Id.* This would prevent the officer from performing his or her current duties. *Id.* TDCJ is currently understaffed and requiring an officer to be present during Lozano's five daily prayers would be unduly burdensome. *Id.*

19

TDCJ also has a compelling governmental interest in time and space, and even if TDCJ were able to meet Lozano's request and allow him to pray outside of his cell, interferences in the time and place of his daily prayers may arise. Space is always at a premium in a prison facility. Offender housing, education, religious worship, cooking, cleaning, serving food, property and supply storage, laundry, administrative spaces, employee spaces, recreation, vocation, agriculture, and many other facets take up the physical space of a prison facility. Exclusive and private space is simply not an available amenity for an incarcerated person. The chapel at the Stringfellow Unit is the only available area on the unit which could reasonably accommodate Lozano's request. *Id.* The chapel, however, may not be available every time Lozano wishes to pray because the chapel is often used to host meetings, congregate worship services for other faith groups, or host activities for staff and offenders. *Id.* TDCJ must accommodate all offenders' religious needs, and often the chapel is used to meet with offenders and host other religious activities, which may conflict with Lozano's prayer time.

Thus, TDCJ has a compelling governmental interest in time and space and ensuring all offenders' reasonable religious needs are met as it is able and cannot ensure Lozano will be able to access the chapel for each and every prayer time. TDCJ also has a compelling governmental interest in the safety and security of the offenders, officers, and other staff within the unit and cannot relocate an offender up to five times a day to a designated place to pray, nor can it relocate an officer up to five times a day to supervise Lozano.

### (2)    Least Restrictive Means

Requiring Lozano to pray his daily prayers in his cell is the least restrictive means of furthering TDCJ's compelling governmental interest in safety and security and time and space. Lozano may pray his daily prayers in his cell or pray during the weekly Jumah service or any other Muslim religious services held on the unit. Because allowing Lozano, and any other offenders, to leave his cell up to five time per day would require repositioning officers throughout the unit to secure the area while

20

praying, the least restrictive means for TDCJ to meet its compelling interest in safety and security is to require offenders to pray in their own cell. Additionally, the bunks in the dormitory are separated by waist-high dividers, which affords offenders privacy while praying because they would only be visible when standing. Requiring Lozano to pray in his cell is therefore the least restrictive means of furthering the compelling governmental interest in safety and security.

### c)      Shower Claim

Lozano challenges the TDCJ policy wherein he is allowed to shower prior to the Muslim Jumah service, but he is not allowed to shower individually or solely with other Muslim offenders. ECF No. 1-1 at 5–6. Even assuming arguendo that Lozano's religious rights have been substantially burdened, he has presented no genuine issue of material fact that contravenes TDCJ's compelling penological interests in security as implemented through its policies and procedures.

### (1)      Compelling Governmental Interest

Even if the showers with general population were a substantial burden on Lozano's religious practice, TDCJ has a compelling governmental interest in showering general population offenders together. To meet their burden of proof on this prong, Defendants need only "take the unremarkable step of providing an explanation for the policy's restrictions that takes into account [their] institutional need to maintain good order, security, and discipline or to control costs." *Smith v. Ozmint*, 578 F.3d 246, 252 (4th Cir. 2009) (quoting *Lovelace v. Lee*, 472 F.3d 174, 190 (4th Cir. 2006)); *see also Gooden v. Crain*, 353 Fed. App'x 885, 887 (5th Cir. 2009).

Here, TDCJ's compelling interest is time and space. TDCJ, although the biggest prison system in the nation, is limited in the time and space it has available for each offender. TDCJ must also maintain safety, security, and run the prison units in an orderly manner. TDCJ accomplishes this compelling governmental interest by maintaining a strict building schedule so all offenders may properly be accounted for at all times. Offenders are allotted times to shower and requiring offenders to shower

in groups with other general population offenders enables efficient and orderly showers and unit schedules.

Time, space, and staffing for offender showers is limited by other activities mandated by law or vital to the welfare and safety of the offenders and the facility. Examples of these activities, as seen on the attached 24-Hour Building Schedule, Exhibit J, include but are not limited to offender recreation, work assignments, meals, showers, educational programs, health care appointments and treatment, visitation, and opportunities for offenders' law library and commissary visits. In order to best serve the needs of the greatest number of offenders, the Stringfellow Unit requires offenders to shower in groups. Lozano is able to shower only with Muslim offenders prior to his Friday Jumah religious service, but TDCJ's compelling governmental interest in time and space prevents Lozano from exclusively showering individually or with other Muslim offenders. Exhibit F at Lozano-000065–66.

### (2)    Least Restrictive Means

There are no least restrictive means available for TDCJ to obtain its compelling governmental interest in time and space at the Stringfellow Unit because there are no individual showers and Lozano may adhere to his religious requirement for modesty by wearing boxers during his shower. *Id.* Lozano is also able to shower with only Muslim offenders prior to his Friday Jumah religious service. *Id.*; Exhibit G; Exhibit J.

Because TDCJ has a compelling governmental interest in time and space, and the least restrictive means of accomplishing this interest is requiring offenders to shower as groups with other general population offenders, there is no genuine issue of material fact on this issue and Defendants' motion for summary judgment should be granted.

**C.    Lozano fails to raise a genuine issue of material fact that his rights have been violated under the Establishment Clause.**

The core inquiry in this Establishment Clause analysis is whether similarly situated adherents of other faiths i.e., Catholic, Protestant, Jewish and Native American, are afforded greater or easier access to religious activities than are Muslim inmates. In this regard, the essence of the Establishment Clause is that "every denomination . . . be equally at liberty to exercise and propagate its beliefs." *Larson v. Valente*, 456 U.S. 228, 245 (1982). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Id.* at 244. A state cannot "pass laws [or enact regulations] that aid one religion" over another. *Everson v. Board of Educ.*, 330 U.S. 1, 15 (1947). Nor can it adopt policies that disproportionately disadvantage one religion or make it more difficult for its adherents to practice their religion than otherwise similarly situated followers of other faiths. *Id.*

In the prison context, the factors set forth in *Turner* are to be applied to First Amendment challenge. *Turner v. Safley*, 482 U.S. 78, 89–90 (1987); *see also Murphy*, 139 S. Ct. 1111, 1482–83 (2019) (Alito, J., dissenting from stay). The Fifth Circuit emphasized that "to ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness test.'" *Brown*, 929 F.3d at 243 (citing *Turner*, 482 U.S. at 86–87). Rejecting the strict-scrutiny test utilized in other circuits and in other contexts, the Fifth Circuit analyzed a prisoner's Establishment Clause claim that certain TDCJ religious policies favored some faiths over others under *Turner*'s deferential standard. *Id.* at 243–244.

In this case, Plaintiff has failed to provide competent summary judgment evidence that Muslim offenders are disproportionately disadvantaged in the exercise of their religion. The evidence attached to Defendants' motion for summary judgment supports the conclusion that the requirement of a volunteer for secondary religious services is applied equally to all religions. Exhibit G at Lozano-

23

000069–70. As written, TDCJ's policy, AD 7.30, is neutral on its face and does not provide preferential treatment to those of different faiths. Exhibit C at Lozano-000033–40. As such, there are no genuine issues of material fact regarding Plaintiff's Establishment Clause claim and it should be dismissed.

Additionally, Lozano claims that Jewish and Native American offenders are afforded greater or easier access to religious activities because they have access to religious designated units, while Muslim offenders do not have a Muslim designated unit. ECF No. 1-1 at 2–5. Lozano alleges the denial of a Muslim designated unit disproportionately disadvantages Muslim offenders. *Id.* Lozano states that Jewish and Native American units are located in closer proximity to volunteers and enhances the opportunity for offenders of these religions to participate in religious activities. *Id.*

Lozano again fails to demonstrate a genuine issue of material fact because inmates of one religion are not entitled to identical worship facilities and the use of religious units does not prove that TDCJ acted with denominational preferences. Courts are "not required to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Walker v. Director, TDCJ-CID*, No. 6:17-cv-380, 2018 WL 4574252, at *5 (E.D. Tex. Sept. 24, 2018). "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). In *Brown v. Collier*, the Fifth Circuit recently provided further guidance on the review of an inmate's Establishment Clause claim:

> In attempting to accommodate the religious beliefs of varying faith groups in compliance with the Free Exercise Clause, prison officials must operate within a zone of "reasonableness." If policies meet *Turner's* reasonableness standard in effectuating the Free Exercise rights of inmates, then those policies should not be pruned or eliminated as a result of higher scrutiny under the Establishment Clause, even if those policies do not treat all faith groups precisely the same. Prison officials have been accorded some flexibility in providing Free exercise opportunities for inmates.

*Brown*, 929 F.3d at 244. Important in this Court's analysis is the recognition that "[t]he Constitution does not require that every religious sect or group within a prison, regardless of size, be provided identical facilities or personnel." *Williams*, 2017 WL 1102884, at *4 (citing *Cruz*, 405 U.S. at 322 n.2

24

("[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.")).

Lozano's claim centers entirely around his presumptive belief that TDCJ was preferring inmates' Jewish and Native American worship over Islamic worship because there are no Muslim designated units. Lozano's practice of his Islamic faith was never suppressed because his unit was not specially designated as Muslim. He has been afforded every "reasonable opportunity" to practice his Islamic faith on the Stringfellow Unit, which is all the Constitution requires for incarcerated individuals, and, although Lozano would prefer otherwise, inmates of varying faiths in prison are not entitled to "be provided identical facilities" in which to hold their worship services. *Davis v. Davis*, 826 F.3d 258, 265 (5th Cir. 2016); *Williams v. Bedison*, No. 2:16-cv-0020, 2017 WL 1102884, at *4 (N.D. Tex. Mar. 3, 2017). As stated in Chaplaincy Policy number 06.01 (rev. 5), attached as Exhibit I, Muslim offenders may meet weekly for Jumah service, even when a volunteer is not present. Exhibit I at Lozano-000088. In this manner, TDCJ ensures Muslim offenders have a reasonable opportunity to practice their faith. Because other services, such as Quaranic studies and Taleem, are considered "secondary services," they may be "scheduled dependent upon the availability of time, space, security, and an approved volunteer." Exhibit H at Lozano-000079; Exhibit C at Lozano-000037–38; Exhibit G at Lozano-000069. This policy applies to every religion in TDCJ, and any religious gathering of more than four offenders. *Brown*, 929 F.3d 226. Even offenders on the Jewish and Native American units are governed by the Scott Plan, which facilitates congregation for one main religious service per week and may be able to gather for a secondary service if there is time, space, security, and a volunteer available. Exhibit C at Lozano-000037–38; Exhibit G at Lozano-000069–70. As such, this policy is neutral on its face and does not provide favorable treatment to those of different faiths. Accordingly, Lozano cannot show a violation of the Establishment Clause and the Court should dismiss this claim because there is no genuine issue of material fact.

Lozano also supports his Establishment Clause claim with the accusation that Chaplain Watkins is biased against Muslim offenders by enforcing policies which are difference from policies on other, "newer," units. ECF No. 1-1 at 5–6; 11 at 2–4. Lozano claims Chaplain Watkins disregards TDCJ policy that "[t]he unit chaplain shall coordinate with the warden to allow Muslim offenders to shower prior to their Jumah service in order to meet their holy obligation for cleanliness in prayer." Exhibit I at Lozano-000089. This argument is without merit, however, because Muslim offenders already have the ability to take showers before Friday Jumah prayer. *Id.*; Exhibit F at Lozano-000065. The Stringfellow Building Schedule, attached as Exhibit J, shows "Islamic Jumah Showers" are scheduled Fridays from 1130-1200 hours just prior to the Jumah prayer service. Exhibit J at Lozano-000096; Exhibit F at Lozano-000065. During this allotted shower time, only Muslim offenders are offered time to shower. Exhibit F at Lozano-000065.

Lozano does not challenge the constitutionality of the policy, but rather claims Chaplain Watkins enforces a different policy from that on other units. *See* ECF No. 11 at 2–3 ("since I've been in the system . . . we shower without population except on this unit because of Chapl[a]in Watkins being bias[ed] against the Islamic faith"). As stated above, the policy as written does not specify that *only* Muslim offenders may shower prior to Jumah, but instead ensures that Muslim offenders may have a time to shower prior to the Jumah service. *See* Exhibit I at Lozano-000089–90. Thus, even if Lozano's allegations are true and Chaplain Watkins follows the policy in a different manner from Chaplains on other units, because Lozano does not contest the constitutionality of the policy, Chaplain Watkin's adherence to the policy as written is not a violation of the constitution. Whether the policy is applied differently on another unit is immaterial because the policy is constitutional on its face and as applied at the Stringfellow Unit.

Accordingly, because Lozano cannot show TDCJ policy prefers one religion over another and his religious freedom has not been suppressed, he cannot show a genuine issue of material fact as to this allegation and Defendants are entitled to summary judgment in their favor.

**D.      Lozano fails to raise a genuine issue of material fact that his rights have been violated under the Equal Protection Clause of the Fourteenth Amendment.**

To maintain his claim for violation of equal protection under the Fourteenth Amendment, Plaintiff must allege and prove purposeful discrimination by Defendants resulting in a discriminatory effect among persons similarly situated. *See Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992). The Fourteenth Amendment does not demand that every religious sect or group within a prison, however few in numbers, must have identical prison facilities or personnel. *Freeman v. Tex. Dep't Criminal Justice*, 369 F.3d 854, 862 (5th Cir. 2004). Rather, prison administrators must provide inmates with reasonable opportunities to exercise their religious freedoms. *Id.* at 863.

"[D]isparate impact, alone, cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (emphasis in original). To maintain an equal protection claim, Plaintiff must allege and prove he received treatment different from that received by similarly situated individuals and the unequal treatment stemmed from a discriminatory intent. *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir. 2001). Discriminatory purpose in an equal protection context implies the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group. *Johnson v. Rodriguez*, 110 F.3d at 306.

In this case, Lozano alleges that he is being denied equal protection because he is denied a Muslim designated unit, "on newer units Muslims and other religious groups . . . shower by themselves," he has not been placed on a faith-based dorm, and he is denied a single cell. ECF No. 1-1 at 2–8. Plaintiff

has failed, however, to support his equal protection claim with competent summary judgment evidence that will survive Defendants' dispositive motion. Instead, Plaintiff asserts conclusory allegations that fail to establish differential treatment and discriminatory intent. The fact that there is not a Muslim designated unit or dorm, other Muslim offenders and members of other religious groups may shower individually on other units, he has not been placed on a faith-based dorm, and he does not have access to a single person cell does not state a claim for an equal protection violation. Plaintiff has failed to produce evidence (1) that the defendant created two or more classifications of similarly situated prisoners that were treated differently, and (2) that the classification had no rational relation to any legitimate governmental objective. *See Stefanoff*, 154 F.3d at 526 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir. 1997), *cert. denied*, 522 U.S. 995 (1997)).

In this case, Lozano has presented no evidence to show that Defendants Collier, Davis, and Chaplain Watkins engaged in "purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Muhammad*, 96 F.2d at 903; *see also Barnes v. Pierce*, 338 F. App'x 373, 377 (5th Cir. 2009) (stating that a Muslim inmate plaintiff, who argued that Christian inmates were able to attend non-primary religious services while Muslim inmates were not, relied on evidence that did not support a finding of discrimination when the evidence suggested all inmates of all faiths "were allowed to attend a particular religious service"). Although Lozano claims that on "newer" units Muslim offenders are able to shower prior to Jumah service with only Muslim offenders, because he is allotted a time to shower prior to the Jumah service, as required by policy, he cannot show any discrimination. Exhibit F at Lozano-000065–66; Exhibit I at Lozano-000089–90. As asserted above, in Section B, even if Lozano's allegations are true, Chaplain Watkins enforces the policy as written, which Lozano cannot show to be a constitutional violation. Lozano does not challenge the policy's constitutionality as written, and the manner in which the policy is applied on other units does not affect its constitutionality. Additionally, this does not prevent Lozano from practicing his Islamic faith. Per

28

TDCJ policy, Lozano has the ability to shower before Jumah services, thereby allowing him to fulfill his obligation for prayer and cleanliness prior to the religious service. *Id.*

Accordingly, there are no genuine issues of material fact regarding Lozano's equal protection claim and it should be dismissed.

### E.  Defendants Collier, Davis, and Watkins are Entitled to Qualified Immunity.

To overcome qualified immunity, the alleged facts must create the reasonable inference that a defendant violated clearly established constitutional rights of which a reasonable person would have known. *See Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Qualified immunity is an immunity from suit and not merely a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). One of the steps in a qualified immunity analysis is to determine whether the law was clearly established at the time of the conduct, such that a reasonable official would know his conduct violated the Constitution. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that his conduct is unlawful and violates the right in question. *Wernecke v. Garcia*, 591 F.3d 386, 392–93 (5th Cir. 2009). The Supreme Court recently "reiterate[d] the longstanding principle that clearly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (internal quotations omitted). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal quotations omitted).

Here, Lozano has presented no genuine issue of material fact to create reasonable inference that the Defendants' personal conduct violated a clearly established constitutional right. To overcome

qualified immunity, Lozano must show that it is "beyond debate" that the Defendants' personal conduct violated Lozano's constitutional rights. *See Mullenix* 136 S.Ct. at 308. In other words, it must be beyond debate that Lozano's factual allegations meet each of the elements for his Section 1983 claims. As explained above, Lozano has not, and cannot, meet that high burden. Even if this Court were to proceed beyond the second step of the analysis, to overcome qualified immunity, Defendants' alleged actions must have been objectively reasonable. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The Court must judge their alleged actions "in light of the circumstances that confronted [them], without the benefit of hindsight." *Id.* As the summary judgment evidence proves, Defendants offered Lozano reasonable opportunities to practice his faith. While Lozano does not have the authority to dictate where he is able to engage in Islamic worship—on a Muslim designated unit, in a private cell, or in a private shower—as an inmate in TDCJ, Defendants acted reasonably in affording the Islamic offenders at the Stringfellow Unit opportunities for religious services at least once per week, a place to pray in their cells, and an opportunity to shower prior to the Jumah service.

In sum, Lozano has not alleged facts from which this Court could conclude that Defendants acted in an objectively unreasonable manner. For the reasons set forth in this motion for summary judgment, Lozano fails to establish any constitutional claim against Defendants and qualified immunity operates to shield them from liability.

## CONCLUSION

Defendants Collier, Davis, and Watkins have produced evidence showing that no genuine issue of material fact exists in this case. Lozano's allegations that these Defendants violated his rights under RLUIPA are insufficient to carry his evidentiary burden of establishing a genuine issue of material fact for trial. Accordingly, Defendants respectfully pray that this Court grant their Motion for Summary Judgment and dismiss all claims against them with prejudice. There exists no genuine dispute of

material fact, as such, Defendants Collier, Davis, and Watkins respectfully ask that the Court issue a

final judgment of dismissal.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**JEFFREY C. MATEER**
First Assistant Attorney General

**RYAN L. BANGERT**
Deputy First Assistant Attorney General

**DARREN L. MCCARTY**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Division Chief
Law Enforcement Defense Division

/s/ Ann Hahn
**ANN HAHN**
Assistant Attorney General
Attorney-in-Charge
Texas State Bar No. 24073654
Southern ID No. 3339297
Ann.Hahn@oag.texas.gov

**OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548, Capitol Station
Austin, TX 78711
(512) 463-2080 / (512) 370-9918 Fax

**ATTORNEYS FOR DEFENDANTS**
**COLLIER, DAVIS, & WATKINS**

**NOTICE OF ELECTRONIC FILING**

I, **ANN HAHN**, Assistant Attorney General of Texas, do hereby certify that I have electronically

submitted for filing, a true and correct copy of the above in accordance with the Electronic Case Files

System of the Southern District of Texas, on June 19, 2020.

/s/ Ann Hahn
**ANN HAHN**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **ANN HAHN**, Assistant Attorney General of Texas, do hereby certify that a true and correct

copy of the will be served by placing same in the United States Mail, on June 19, 2020, addressed to:

Eric Demond Lozano
TDCJ #1915276
Stringfellow Unit
1200 FM 655
Rosharon, TX 77583
*Plaintiff Pro Se*

/s/ Ann Hahn
**ANN HAHN**
Assistant Attorney General